# EXHIBIT B

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
MELISSA CATAPANO, an infant by her father
and natural guardian , JOHN CATAPANO and
JOHN CATAPANO, individually,

                 Plaintiffs,

      -v-

JIMINY PEAK MOUNTAIN RESORT, LLC and
WIEGAND SPORTS, LLC,

                 Defendants.
------------------------------------------------------------X

**CV 13 2402**

**COMPLAINT**

Civil Action No. _____

**GARAUFIS, J.**

**ORENSTEIN, M.J.**

      Plaintiffs, MELISSA CATAPANO by her father and natural guardian , JOHN CATAPANO and JOHN CATAPANO, individually, hereby sue defendants, JIMINY PEAK MOUNTAIN RESORT, LLC and WIEGAND SPORTS, LLC and allege as follows:

## PARTIES

      1.    The plaintiffs, MELISSA CATAPANO and JOHN CATAPANO reside in the County of Suffolk, State of New York.

      2.    The defendant, JIMINY PEAK MOUNTAIN RESORT, LLC is a corporation organized under the laws of the State of Massachusetts with its principal place of business located at 37 Corey Rd Hancock, MA 01237.

      3.    The defendant JIMINY PEAK MOUNTAIN RESORT, LLC regularly solicits business in the State of New York.

      4.    The defendant JIMINY PEAK MOUNTAIN RESORT, LLC derives substantial revenue from the State of New York.

      5.    Defendant WIEGAND SPORTS, LLC is a corporation organized under the laws of the State of Utah with its principal place of business located at 3573 Apple Mill Cove, Salt Lake City Utah 84109.

      6.    Defendant WIEGAND SPORTS, LLC regularly solicits business in the State of New York.

      7.    Defendant WIEGAND SPORTS, LLC derives substantial revenue from the State of New York.

## STATEMENT OF VENUE AND JURISDICTION

      8.    Jurisdiction is proper in this Court under 28 U.S.C. §1332(a)(1) because the plaintiffs and the defendants are citizens of different states and the amount in controversy exceeds $75,000.00, exclusive of interests and costs.

      9.    Venue is proper in this Court under 28 U.S.C. §1391, as a substantial part of the events or omissions giving rise to this claim took place within this judicial district.

## FACTUAL BACKGROUND

10.     On August   12, 2012 infant plaintiff, MELISSA CATAPANO, then fifteen (15) years old suffered serious injuries while she and her sister, DANIELLE CATAPANO  were passengers on the amusement ride known as the "Mountain Coaster" located at the Jiminy Peak Mountain Resort located in Hancock, Massachusetts.

11.     The Jiminy Peak Mountain Resort is one of the largest ski and snowboard resorts in Southern New England.

12.     In the summer months the resort hosts the "Mountain Adventure Park" which features various amusements, including the ride or amusement known as the Mountain Coaster which is at issue in this matter.

13.     The Jiminy Peak Mountain Resort actively solicits and receives many visitors from the State of New York both in the winter and summer months.

14.     The Jiminy Peak property itself is owned by a real estate investment trust known as, CNL Lifestyle Properties, Inc. of Orlando, Florida, pursuant to a purchase which took place in January, 2010.

15.     At or about the time of said purchase, operational control of the resort was leased back to defendant, JIMINY PEAK MOUNTAIN RESORT, LLC (Hereinafter, "JIMINY") for a period of forty (40) years.

16.     At the time of the event involving infant plaintiff, MELISSA CATAPANO, defendant JIMINY had operational control of the subject resort pursuant to the terms of a triple net lease entered into with CNL Lifestyle Properties, Inc.

17.     Defendant ,Wiegand Sports, LLC  (Hereinafter " WIEGAND") is the United States Affiliate of Wiegand GmbH & Co. located in Rasdorf, State of Hesse, Germany.

18.     Defendant WIEGAND is the United States dealer and distributor of the Mountain Coaster or Alpine Coaster, as it is marketed ,  (hereinafter "Coaster" ) that was installed at the Jiminy Peak Resort in 2006 and  is  in the business of designing, developing, setting specifications, manufacturing, marketing, selling, and distributing the  Coaster at issue herein.

19.     The Coaster consists of a track of tubular steel rails upon which small cars known as "coasterbobs" ride.

20.     The coasterbobs are pulled to the top of the track by cable and then propelled by gravity down a winding path designed to follow the topography of the area.

21.     The coasterbobs are designed to carry two riders, but can be utilized by single riders as well.

22.     The riders sit upright on the coasterbob one behind the other in a sled like fashion.

23.     The rider who sits at the rear of the coasterbob has some control of the speed of the car through the use of brake handles on either side of the car.

24.     The rider at the rear of the coasterbob can increase the speed of descent by pushing forward on the brake handles which in turn releases the brakes and allows for greater velocity.

25.     The rear rider of the coasterbob is provided with a seat belt which includes both a lap and shoulder belt.

26.     The front rider of the coasterbob is provided only with a lap belt.

27.     The ride terminates at an automatic brake or conveyor system located at the bottom of the run.

28.     The Coaster installed at Jiminy Peak was ordered by Brian Fairbank, (Hereinafter "Fairbank") President and CEO JIMINY PEAK MOUNTAIN RESORT, LLC, in an effort to generate greater revenue in the summer, or non-skiing months of the year.

29.     After the introduction of the Coaster at Jiminy Peak, the resort saw an increase in attendance of 1/3. As Fairbank has stated in interviews, "It was a people magnet!"

30.     Although the coaster was initially intended to boost revenue in the summer months, it also remains open to riders visiting the resort during the winter ski season.

31.     Fairbank originally committed to the purchase of the Coaster in November of 2005 and the Mountain Coaster at the Jiminy Peak resort opened to the public in July, 2006.

32.     In interviews Mr. Fairbank has indicated that one of the attractions of the Mountain Coaster for Mr. Fairbank was that it was not labor intensive to run.

33.     As Mr. Fairbank has stated, "One of the things the Mountain Coaster did for us was allow us to offer a time-frame ticket, so a family can come here and buy either single rides, a multi-ride booklet or a three-hour ticket. This allows the parents to leave the kids and go off and relax."

34.     There are now more than 300 WIEGAND Coasters installed around the world.

35.     Unfortunately, since the introduction of the WIEGAND Coasters, they have been responsible for numerous, serious and in some instances, life threatening injuries.

36.     The spate of injuries caused by this ride in the small European Principality of Andorra has led to the development of a website devoted to the closing of the ride located there via a proposed petition to the European Commission on Human Rights.  The website can be found at: http://stoptobotronc.com/[2].

37.     According to the website, at that park alone, there have been more than 50 injuries to riders of the Wiegand Coaster. [1]

38.     According to Wiegand literature and ride operators the seat belts are intended to hold riders in place as they are subjected to the g forces generated by the rides.

39.     Unfortunately, the seatbelts have proved woefully inadequate and people, including the infant plaintiff herein, have been injured as a result of being partially ejected from the ride and striking parts of their bodies against projections along the path of the ride or the tracks themselves.

## FIRST CAUSE OF ACTION

### (NEGLIGENCE: Infant, MELISSA CATAPANO by her father and natural guardian, JOHN CATAPANO against Jiminy Peak Mountain Resort, LLC)

40.     Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein and further allege as follows.

41.     As the operator of the Jiminy Peak Mountain Resort , defendant JIMINY PEAK MOUNTAIN RESORT, LLC and its agents, servants and/or employees  owed all lawful visitors, including the infant plaintiff, a duty to exercise reasonable care in the operation, maintenance and control of the Coaster located on its premises.

42.     The defendant JIMINY its agents, employees and/or servants breached this duty of care, causing injury to the infant plaintiff as a direct and proximate result of its negligence, recklessness and carelessness.

43.     On August 12, 2012 the infant plaintiff was a rear passenger in a coasterbob on the Mountain Coaster located at the Jiminy Peak Ski Resort.

---

[1] Site last visited on April 2, 2013.

[2] Site last visited on April 2, 2013.

[3] The ride located in Andorra is known as the "Tobotronc".

44. Seated in front of infant plaintiff, MELISSA CATAPANO was her sister Danielle Catapano.

45. At the time of the incident there were three employees of defendant JIMINY engaged in overseeing the operation of the coaster.

46. Vanessa DeZess was employed as the ride operator at the time of the incident.

47. James Taylor Shaw was employed at the brake station attendant at the time of the incident.

48. Alex Belanger was employed as the top attendant at the time of the incident.

49. At the time of the incident it was known by defendant JIMINY that rear riders in the coasterbobs would often defeat the shoulder harness by placing it behind themselves after they mounted the coasterbob.

50. This was done in an effort to allow the rear rider to push the brake levers all the way forward and thus allow the coasterbob to attain maximum velocity down the run.

51. On at least two occasions prior to the time of the incident, the infant plaintiff, MELISSA CATAPANO did not utilize the shoulder restraint portion of the operator's seat belt.

52. It was known or should have been known by defendant JIMINY, its agents, employees and or servants that the infant plaintiff, MELISSA CATAPANO had not utilized her shoulder harness on previous occasions.

53. At no time prior to the occurrence complained of herein was the infant plaintiff, MELISSA CATAPANO told by any staff member of defendant JIMINY that she was required to use her shoulder harness.

54. At no time prior to the time of the occurrence was the infant plaintiff, MELISSA CATAPANO denied entry or access to the Coaster by defendant JIMINY.

55. During the actual run which caused the injuries complained of herein, the infant plaintiff, MELISSA CATAPANO was clearly visible to defendant JIMINY employee, top attendant, Alex Belanger.

56. The infant plaintiff, MELISSA CATAPANO was clearly visible to Alex Belanger not wearing her shoulder harness prior to the incident complained of herein.

57. At the time of the occurrence complained of herein, the top attendant Alex Belanger had access to a stop switch at the top of the run which would allow him to shut down the tow cable pulling the coasterbobs to the top of the run.

58. At the time of this occurrence complained of herein, the top attendant Alex Belanger's post was at the top of the run; a location where the coasterbobs have attained little or no velocity.

59. Despite being clearly visible to him, top attendant Alex Belanger took no steps to insure that the infant plaintiff, MELISSA CATAPANO utilized her shoulder harness.

60. Despite being clearly visible to him, top attendant Alex Belanger took no steps to stop the ride and direct the infant plaintiff, MELISSA CATAPANO to stop her coasterbob until such time as she could properly secure her shoulder harness.

61. The defendant JIMINY, its agents, employees and or/or servants failed to properly train its ride attendants to be properly vigilant in insuring that the users of the COASTER would be properly secured.

62. The defendant JIMINY, its agents, employees and/or servants failed to provide the infant plaintiff, MELISSA CATAPANO with a proper restraint to insure that her entire body would remain within the coasterbob as she rode the mountain coaster.

63. The defendant Jiminy Peak, its agents, employees and/or servants failed to provide the infant plaintiff, MELISSA CATAPANO with sufficient warning or instruction with regard to the coasterbob's propensity to allow partial ejection of riders or their extremities.

64.     That as a result of the foregoing, the infant plaintiff, MELISSA CATAPANO lost control of the speed of the coasterbob, resulting in both her and her sister, Danielle Catapano being partially ejected from the coasterbob in which they were riding resulting in serious injury to both sisters.

## SECOND CAUSE OF ACTION

### (NEGLIGENCE:  Infant, MELISSA CATAPANO, by her father and natural guardian, JOHN CATAPANO, against WIEGAND SPORTS, LLC)

65.     Plaintiff re-alleges and incorporates by reference each and every allegation contained in the foregoing paragraphs as though fully set forth herein.

66.     At all times relevant to this cause of action, the Defendant WIEGAND was in the business of designing, developing, setting specifications, manufacturing, marketing, selling, and distributing the Coaster at issue herein.

67.     Defendant WIEGAND SPORTS, LLC designed, manufactured, marketed, inspected, labeled, promoted, distributed and sold the Coaster upon which the infant plaintiff, MELISSA CATAPANO was riding at the time of the occurrence complained of herein.

68.     Defendant WIEGAND had a duty to exercise reasonable and prudent care in the development, testing, design, manufacture, inspection, marketing, labeling, promotion, distribution and sale of the subject Coaster so as to avoid exposing others to foreseeable and unreasonable risks of harm.

69.     Defendant WIEGAND knew or reasonably should have known that the subject Coaster was dangerous or was likely to be dangerous when used in its intended or reasonably foreseeable manner.

70.     At the time of manufacture and sale of the Coaster, Defendant WIEGAND knew or should have known that the Coaster:

a.     Was designed and manufactured in such a manner so as to present an unreasonable risk of partial ejection by failing to provide proper or adequate restraints or coasterbob design;

b.     Was designed and manufactured so as to present an unreasonable risk of injury due to partial ejection and contact with projections or the tracks themselves along the course of the ride;

c.     Was designed without any type of interlock device to prevent riders from defeating the shoulder harness portion of the seat belt;

d.     Was designed and manufactured to have insufficient braking strength to bring the coasterbob to a stop in the event the operator lost control or contact with the brakes as a consequence of the known and anticipated g forces generated by the COASTER.

## THIRD CAUSE OF ACTION

### (STRICT PRODUCTS LIABILITY - FAILURE TO WARN: the infant plaintiff, MELISSA CATAPANO by her father and natural guardian, JOHN CATAPANO against, WIEGAND SPORTS, LLC)

71.     Plaintiffs re-allege and incorporate by reference each and every allegation contained in the foregoing paragraphs as though fully set forth herein.

72.     Defendant   WIEGAND designed, set specifications, manufactured, prepared, assembled, processed, marketed, labeled, distributed, and sold the subject Coaster, into the stream

of commerce and in the course of same, directly advertised and marketed the device to consumers or persons offering use of the Coaster to consumers.

73.     At the time Defendant WIEGAND designed, manufactured, prepared, assembled, processed, marketed, labeled, distributed, and sold the Coaster into the stream of commerce, Defendant WIEGAND knew or should have known the device presented an unreasonable danger to users of the product when put to its intended and reasonably anticipated use. Specifically, Defendant WIEGAND knew or should have known at the time they manufactured, labeled, distributed and sold posed a significant and higher risk than other similar rides of insufficient occupant restraint and partial ejection and resulting serious injuries.

74.     Therefore, Defendant WIEGAND had a duty to warn of the risk of harm associated with the use of the Coaster and to provide adequate instructions on the safe and proper use of the Coaster. Defendant further had a duty to warn of dangers and proper safety instructions that it became aware of even after the Coaster was distributed and made available to the public.

75.     Despite this duty, Defendant WIEGAND failed to adequately warn of material facts regarding the safety of the Coaster and further failed to adequately provide instructions on the safe and proper use of the Coaster.

76.     No consumer would have used the Coaster in the manner directed, had those facts been made known to the public at large.

77.     The risks associated with the Coaster as described herein are of such a nature that ordinary consumers would not have readily recognized the potential harm.

78.     Infant plaintiff used the Coaster in a normal, customary, intended, and foreseeable manner.

79.     Therefore, the Coaster used by the infant plaintiff was defective and unreasonably dangerous at the time of release into the stream of commerce due to inadequate warnings, labeling and/or instructions accompanying the product.

80.     The Coaster used by the plaintiff was in the same condition as when it was manufactured, inspected, marketed, labeled, promoted, distributed and sold by Defendants.

81.     As a direct and proximate result of Defendant WIEGAND's lack of sufficient warning and/or instructions, infant plaintiff MELISSA CATAPANO has suffered and will continue to suffer serious physical injuries, economic loss, loss of enjoyment of life, disability, and other losses, in an amount to be determined at trial.


## FOURTH CAUSE OF ACTION

### (STRICT PRODUCTS LIABILITY – DESIGN DEFECTS: Infant, MELISSA CATAPANO by her father and natural guardian JOHN CATAPANO against WIEGAND SPORTS, LLC)

82.     Plaintiffs re-allege and incorporate by reference each and every allegation contained in the foregoing paragraphs as though fully set forth herein.

83.     At all times relevant to this action, Defendant WIEGAND developed, tested, designed, manufactured, inspected, labeled, promoted, distributed and sold into the stream of commerce the subject Coaster.

84.     The Coaster was expected to, and did, reach its intended consumers without substantial change in the condition in which it was in when it left Defendant WIEGAND's possession. In the alternative, any changes that were made to the Coaster used by Infant plaintiff were reasonably foreseeable to Defendants.

85. The Coaster used by infant plaintiff was defective in design because it failed to perform as safely as persons who ordinarily use the product would have expected at the time of use.

86. The Coaster used by infant plaintiff was defective in design, in that its risks of harm exceeded its claimed benefits.

87. Infant plaintiff used the Coaster in a manner that was reasonably foreseeable to Defendants.

88. Infant plaintiff could not, by the exercise of reasonable care, have discovered the Coaster's defective condition or perceived its unreasonable dangers prior to her injury.

89. As a direct and proximate result of the Coaster's defective design, infant plaintiff has suffered and will continue to suffer serious physical injuries, economic loss, loss of enjoyment of life, disability, and other losses, in an amount to be determined at trial.

## FIFTH CAUSE OF ACTION

### (BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY: Infant, MELISSA CATAPANO by her father and natural guardian JOHN CATAPANO against WIEGAND SPORTS, LLC)

90. Plaintiffs re-allege and incorporate by reference each and every allegation contained in the foregoing paragraphs as though fully set forth herein.

91. At all times relevant to this action, Defendant WIEGAND designed, researched, developed, manufactured, tested, labeled, inspected, advertised, promoted, marketed, sold, and distributed into the stream of commerce the subject coaster.

92. At the time and place of the sale, distribution, and supply of the Defendants WIEGAND'S coaster Defendant WIEGAND expressly represented and warranted, via marketing and other materials submitted with the product, that the coaster was safe for its intended and reasonably anticipated use.

93. Defendant WIEGAND knew of the intended and reasonably foreseeable use of the coaster, at the time they marketed, sold, and distributed the product for use by Plaintiff, and impliedly warranted the product to be of merchantable quality, and safe and fit for its intended use.

94. Defendants impliedly represented and warranted to the public, that the Coaster was safe and of merchantable quality and fit for the ordinary purpose for which the product was intended and marketed to be used.

95. The representations and implied warranties made by Defendant WIEGAND were false, misleading, and inaccurate because the Coaster was defective, unsafe, unreasonably dangerous, and not of merchantable quality, when used in its intended and/or reasonably foreseeable manner.

96. At the time of infant plaintiff's injury in August, 2012, at the Jiminy Peak Resort defendant WEIGAND was already aware of numerous accidents and injuries involving its Coasters similar to the one installed at the Jiminy Peak Resort.

97. The public at large and plaintiff in particular reasonably relied on the superior skill and judgment of Defendant WIEGAND as the designers, researchers manufacturers and distributors of the Coaster, as to whether the Coaster was of merchantable quality and safe and fit for its intended use, and also relied on the implied warranty of merchantability and fitness for the particular use and purpose for which the Coaster was manufactured and sold.

98. Defendant WIEGAND placed the Coaster into the stream of commerce in a defective, unsafe, and unreasonably dangerous condition, and the product was expected to and did reach infant plaintiff without substantial change in the condition in which the Coaster was manufactured and sold.

99. Defendant WIEGAND breached their implied warranty because their Coaster was not fit for its intended use and purpose.

100. As a proximate result of Defendant WIEGAND breaching the implied warranties, infant plaintiff, MELISSA CATAPANO has suffered and will continue to suffer serious physical injuries, economic loss, loss of enjoyment of life, disability, and other losses, in an amount to be determined at trial.

## SEVENTH CAUSE OF ACTION

### (PLAINTIF, JOHN CATAPANO against JIMINY PEAK MOUNTAIN RESORT, LLC and WIEGAND SPORTS, LLC)

101. Plaintiff, John Catapano re-alleges and incorporates by reference each and every allegation contained in the foregoing paragraphs as though fully set forth herein.

102. Plaintiff John Catapano is the father and natural guardian of the infant plaintiff, MELISSA CATAPANO, and as such Plaintiff, JOHN CATAPANO was entitled to the society, services, comfort and enjoyment of infant plaintiff, MELISSA CATAPANO.

103. As a direct proximate results of the actions of the defendants as alleged herein, plaintiff, JOHN CATAPANO has been deprived of the society, services, comfort and enjoyment of infant plaintiff, MELISSA CATAPANO and has suffered economic loss.

## PUNITIVE DAMAGES ALLEGATIONS

### (MELISSA CATAPANO by her father and natural guardian JOHN CATAPANO and JOHN CATAPANO, individually against JIMINY PEAK MOUNTAIN RESORT, LLC and WIEGAND SPORTS, LLC)

104. Plaintiff re-alleges each and every allegation in this Complaint and incorporates each allegation into this Count, as if set forth at length, in its entirety.

105. Plaintiff is entitled to an award of punitive and exemplary damages based upon Defendants' intentional, willful, knowing, fraudulent, malicious acts, omissions, and conduct, and their complete and total reckless disregard for the public safety and welfare.

106. Defendants had knowledge of, and were in possession of evidence demonstrating that, the subject Coaster was defective and unreasonably dangerous yet, Defendants failed to:

a. Inform or warn Plaintiffs of the dangers;

b. To establish, staff and maintain an adequate monitoring, surveillance and safety plan for the Coaster to insure that riders were properly restrained before proceeding along a section of the ride that was controlled by gravity; and

c. Recall the Coaster from the market

107. Defendants acted to serve their own interests and having reasons to know and consciously disregarding the substantial risk that their product might kill or significantly harm riders consciously pursued a course of conduct knowing that such conduct created a substantial risk of significant harm to other persons.

108. As a direct, proximate, and legal result of Defendants' acts and omissions a described herein, plaintiffs have suffered and will continue to suffer serious physical injuries, economic loss, loss of enjoyment of life, disability, and other losses, in an amount to be determined at trial.

## PRAYER FOR DAMAGES

WHEREFORE, Plaintiffs, pray for relief on the entire complaint, as follows:

a.      Judgment to be entered against all defendants on all causes of action of this Complaint;

b.      Plaintiffs be awarded full, fair, and complete recovery for all claims and causes of action relevant to this action;

c.      Plaintiffs be awarded all appropriate costs, fees, expenses, and pre-judgment and post judgment interest, as authorized by law on the judgments entered in Plaintiffs' behalf; and,

d.      Such other relief the court deems just and proper.

WHEREFORE, plaintiffs pray for relief on the entire complaint, as follows:

### AS TO THE FIRST CAUSE OF ACTION
1.      General damages according to proof at the time of trial;
2.      Medical and other special damages, past, present, and future, according to proof at the time of trial;
3.      Interest pursuant to the laws of the State of New York;
4.      Costs of suit incurred herein;
5.      Punitive damages; and
6.      For such other and further relief as the court may deem just and proper.

### AS TO THE SECOND CAUSE OF ACTION
1.      General damages according to proof at the time of trial;
2.      Medical and other special damages, past, present, and future, according to proof at the time of trial;
3.      Interest pursuant to the laws of the State of New York;
4.      Costs of suit incurred herein;
5.      Punitive damages; and
6.      For such other and further relief as the court may deem just and proper.

### AS TO THE THIRD CAUSE OF ACTION
1.      General damages according to proof at the time of trial;
2.      Medical and other special damages, past, present, and future, according to proof at the time of trial;
3.      Interest pursuant to the laws of the State of New York;
4.      Costs of suit incurred herein;
5.      Punitive damages; and
6.      For such other and further relief as the court may deem just and proper.

### AS TO THE FOURTH CAUSE OF ACTION
1.      General damages according to proof at the time of trial;
2.      Medical and other special damages, past, present, and future, according to proof at the time of trial;

3.      Interest pursuant to the laws of the State of New York;
4.      Costs of suit incurred herein;
5.      Punitive damages; and
6.      For such other and further relief as the court may deem just and proper.

## AS TO THE FIFTH CAUSE OF ACTION

1.      General damages according to proof at the time of trial;
2.      Medical and other special damages, past, present, and future, according to proof at the
        time of trial;
3.      Interest pursuant to the laws of the State of New York;
4.      Costs of suit incurred herein;
5.      Punitive damages; and
6.      For such other and further relief as the court may deem just and proper.

## AS TO THE SIXTH CAUSE OF ACTION

1.      General damages according to proof at the time of trial;
2.      Medical and other special damages, past, present, and future, according to proof at the
        time of trial;
3.      Interest pursuant to the laws of the State of New York;
4.      Costs of suit incurred herein;
5.      Punitive damages; and
6.      For such other and further relief as the court may deem just and proper.

## AS TO THE SEVENTH CAUSE OF ACTION

1.      General damages according to proof at the time of trial;
2.      Medical and other special damages, past, present, and future, according to proof at the
        time of trial;
3.      Interest pursuant to the laws of the State of New York;
4.      Costs of suit incurred herein;
5.      Punitive damages; and
6.      For such other and further relief as the court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demands trial by jury on all issues.

Dated:  New York, NY
        April 18, 2013

                                        Respectfully Submitted,

                                        MARTIN GROSSMAN, ESQ. (MG 8844)
                                        ROBERT A. CARDALI & ASSOC., LLP
                                        Attorneys for the plaintiffs
                                        MELISSA CATAPANO, and infant by her father and
                                        natural guardian & JOHN CATAPANO and JOHN
                                        CATAPANO individually
                                        39 Broadway – 35th floor
                                        New York, NY 10006
                                        (212) 964-3855

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

----------------------------------------------------------------X

DANIELLE CATAPANO, an infant by her mother and
natural guardian, CHRISTINE CATAPANO and
CHRISTINE CATAPANO, individually,

Plaintiffs,

-v-

JIMINY PEAK MOUNTAIN RESORT, LLC and
WIEGAND SPORTS, LLC,

Defendants.

----------------------------------------------------------------X

**F I L E D**
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★   **APR 16 2013**   ★

LONG ISLAND OFFICE
**COMPLAINT**

**CV 13 2278**

**SPATT, J.**

**LINDSAY, M.**

Plaintiffs, DANIELLE CATAPANO, by her mother and natural guardian, CHRISTINE CATAPANO and CHRISTINE CATAPANO, individually, hereby sue defendants JIMINY PEAK MOUNTAIN RESORT, LLC and WIEGAND SPORTS, LLC and allege as follows:

## PARTIES

1.     The plaintiffs, CHRISTINE CATAPANO and DANIELLE CATAPANO reside in the County of Suffolk, State of New York.

2.     The defendant, JIMINY PEAK MOUNTAIN RESORT, LLC is a corporation organized under the laws of the State of Massachusetts with its principal place of business located at 37 Corey Rd Hancock, MA 01237.

3.     The defendant JIMINY PEAK MOUNTAIN RESORT, LLC regularly solicits business in the State of New York.

4.     The defendant JIMINY PEAK MOUNTAIN RESORT, LLC derives substantial revenue from the State of New York.

5.     Defendant WIEGAND SPORTS, LLC is a corporation organized under the laws of the State of Utah with its principal place of business located at 3573 Apple Mill Cove, Salt Lake City Utah 84109.

6.     Defendant WIEGAND SPORTS, LLC regularly solicits business in the State of New York.

7.      Defendant WIEGAND SPORTS, LLC. Derives substantial revenue from the State of New York.

## STATEMENT OF VENUE AND JURISDICTION

8.      Jurisdiction is proper in this Court under 28 U.S.C. §1332(a)(1) because the plaintiffs and the defendants are citizens of different states and the amount in controversy exceeds $75,000.00, exclusive of interests and costs.

9.      Venue is proper in this Court under 28 U.S.C. §1391, as a substantial part of the events or omissions giving rise to this claim took place within this judicial district.

## FACTUAL BACKGROUND

10.  .   On August 12, 2012 infant plaintiff, DANIELLE CATAPANO, then eight years old suffered catastrophic injuries while she and her fifteen year old sister, MELISSA CATAPANO were passengers on the amusement ride known as the "Mountain Coaster" located at the Jiminy Peak Mountain Resort located in Hancock, Massachusetts.

11.      The Jiminy Peak Mountain Resort is one of the largest ski and snowboard resorts in Southern New England.

12.      In the summer months the resort hosts the "Mountain Adventure Park" which features various amusements, including the ride or amusement known as the **Mountain Coaster** which is at issue in this matter.

13.      The Jiminy Peak Mountain Resort actively solicits and receives many visitors from the State of New York both in the winter and summer months.

14.      The Jiminy Peak property itself is owned by a real estate investment trust known as, CNL Lifestyle Properties, Inc. of Orlando, Florida, pursuant to a purchase which took place in January, 2010.

15.      At or about the time of said purchase, operational control of the resort was leased back to defendant, JIMINY PEAK MOUNTAIN RESORT, LLC (Hereinafter, "**JIMINY**") for a period of forty (40) years.

16.      At the time of the event involving infant plaintiff, DANIELLE CATAPANO, defendant JIMINY had operational control of the subject resort pursuant to the terms of a triple net lease entered into with CNL Lifestyle Properties, Inc.

17.      Defendant, Wiegand Sports, LLC  (Hereinafter " **WIEGAND")** is the United States Affiliate of Wiegand GmbH & Co. located in Rasdorf, State of Hesse, Germany.

18.     Defendant WIEGAND is the United States dealer and distributor of the Mountain Coaster or Alpine Coaster, as it is marketed, (hereinafter "Coaster" ) that was installed at the Jiminy Peak Resort in 2006 and is in the business of designing, developing, setting specifications, manufacturing, marketing, selling, and distributing the Coaster at issue herein.

19.     The Coaster consists of a track of tubular steel rails upon which small cars known as "coasterbobs" ride.

20.     The coasterbobs are pulled to the top of the track by cable and then propelled by gravity down a winding path designed to follow the topography of the area.

21.     The coasterbobs are designed to carry two riders, but can be utilized by single riders as well.

22.     The riders sit upright on the coasterbob one behind the other in a sled like fashion.

23.     The rider who sits at the rear of the coaster bob has some control of the speed of the car through the use of brake handles on either side of the car.

24.     The rider at the rear of the coasterbob can increase the speed of descent by pushing forward on the brake handles which in turn releases the brakes and allows for greater velocity.

25.     The rear rider of the coasterbob is provided with a seat belt which includes both a lap and shoulder belt.

26.     The front rider of the coasterbob is provided only with a lap belt.

27.     The ride terminates at an automatic brake or conveyor system located at the bottom of the run.

28.     The Coaster installed at Jiminy Peak was ordered by Brian Fairbank, (Hereinafter "Fairbank") President and CEO JIMINY PEAK MOUNTAIN RESORT, LLC, in an effort to generate greater revenue in the summer, or non-skiing months of the year.

29.     After the introduction of the Coaster at Jiminy Peak, the resort saw an increase in attendance of 1/3. As Fairbank has stated in interviews, "It was a people magnet!"

30.     Although the coaster was initially intended to boost revenue in the summer months, it also remains open to riders visiting the resort during the winter ski season.

31.     Fairbank originally committed to the purchase of the Coaster in November of 2005 and the Mountain Coaster at the Jiminy Peak resort opened to the public in July, 2006.

32.    In interviews Mr. Fairbank has indicated that one of the attractions of the Mountain Coaster for Mr. Fairbank was that it was not labor intensive to run.

33.    As Mr. Fairbank has stated, "One of the things the Mountain Coaster did for us was allow us to offer a time-frame ticket, so a family can come here and buy either single rides, a multi-ride booklet or a three-hour ticket. *This allows the parents to leave the kids and go off and relax.*"

34.    There are now more than 300 WIEGAND Coasters installed around the world.

35.    Unfortunately, since the introduction of the WIEGAND Coasters, they have been responsible for numerous, serious and in some instances, life threatening injuries.

36.    The spate of injuries caused by this ride in the small European Principality of Andorra has led to the development of a website devoted to the closing of the ride located there via a proposed petition to the European Commission on Human Rights. The website can be found at: http://stoptobotronc.com/[1]

37.    According to the website, at that park alone, there have been more than 50 injuries to riders of the Wiegand Coaster. [2]

38.    According to Wiegand literature and ride operators the seat belts are intended to hold riders in place as they are subjected to the g-forces generated by the rides.

39.    Unfortunately, the seatbelts have proved woefully inadequate and people, including the infant plaintiff herein, have been injured as a result of being partially ejected from the ride and striking parts of their bodies against projections along the path of the ride or the tracks themselves.

## FIRST CAUSE OF ACTION
### (NEGLIGENCE: Infant DANIELLE CATAPANO by her mother and natural guardian, CHRISTINE CATAPANO against Jiminy Peak Mountain Resort, LLC)

40.    Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein and further allege as follows.

41.    As the operator of the Jiminy Peak Mountain Resort, defendant JIMINY PEAK MOUNTAIN RESORT, LLC. and its agents, servants and/or employees owed all lawful visitors, including the infant plaintiff, a duty to exercise reasonable care in the operation, maintenance and control of the Coaster located on its premises.

---

[1] Site last visited on April 2, 2013.
[2] The ride located in Andorra is known as the "Tobotronc".

42.    The defendant JIMINY its agents, employees and/or servants breached this duty of care, causing injury to the infant plaintiff as a direct and proximate result of its negligence, recklessness and carelessness.

43.    On August 12, 2012 the infant plaintiff was a front passenger in a coasterbob on the Mountain Coaster located at the Jiminy Peak Ski Resort.

44.    Seated behind infant plaintiff DANIELLE CATAPANO was her fifteen year old sister Melissa Catapano who was in control of the brake levers.

45.    At the time of the incident there were three employees of defendant JIMINY engaged in overseeing the operation of the coaster.

46.    Venessa DeZess was employed as the ride operator at the time of the incident.

47.    James Taylor Shaw was employed at the brake station attendant at the time of the incident.

48.    Alex Belanger was employed as the top attendant at the time of the incident.

49.    At the time of the incident it was known by defendant JIMINY that rear riders in the coasterbobs would often defeat the shoulder harness by placing it behind themselves after they mounted the coasterbob.

50.    This was done in an effort to allow the rear rider to push the brake levers all the way forward and thus allow the coasterbob to attain maximum velocity down the run.

51.    On at least two occasions prior to the time of the incident, Melissa Catapano did not utilize the shoulder restraint portion of the operator's seat belt.

52.    It was known or should have been known by defendant JIMINY, its agents, employees and or servants that Melissa Catapano had not utilized her shoulder harness on previous occasions.

53.    At no time prior to the occurrence complained of herein was Melissa Catapano told by any staff member of defendant JIMINY that she was required to use her shoulder harness.

54.    At no time prior to the time of the occurrence was Melissa Catapano denied entry or access to the Coaster by defendant JIMINY

55.    During the actual run which caused the injuries complained of herein, Melissa Catapano was clearly visible to defendant JIMINY employee, top attendant, Alex Belanger.

56.     Melissa Catapano was clearly visible to Alex Belanger not wearing her shoulder harness prior to the incident complained of herein.

57.     At the time of the occurrence complained of herein, the top attendant Alex Belanger had access to a stop switch at the top of the run which would allow him to shut down the tow cable pulling the coasterbobs to the top of the run.

58.     At the time of this occurrence complained of herein, the top attendant Alex Belanger's post was at the top of the run; a location where the coasterbobs have attained little or no velocity.

59.     Despite being clearly visible to him, top attendant Alex Belanger took no steps to insure that Melissa Catapano utilized her shoulder harness.

60.     Despite being clearly visible to him, top attendant Alex Belanger took no steps to stop the ride and direct Melissa Catapano to stop her coasterbob until such time as she could properly secure her shoulder harness.

61.     The defendant JIMINY, its agents, employees and or/or servants failed to properly train its ride attendants to be properly vigilant in insuring that the users of the COASTER would be properly secured.

62.     The defendant JIMINY, its agents, employees and/or servants failed to provide infant plaintiff, Danielle Catapano with a proper restraint to insure that her entire body would remain within the coasterbob as she rode the mountain coaster.

63.     The defendant Jiminy Peak, its agents, employees and/or servants failed to provide infant plaintiff with sufficient warning or instruction with regard to the coasterbob's propensity to allow partial ejection of riders or their extremities.

64.     That as a result of the foregoing, Melissa Catapano lost control of the speed of the coasterbob, resulting in both her and her sister infant plaintiff, Danielle Catapano being partially ejected from the coasterbob in which they were riding resulting in serious injury to infant plaintiff, Danielle Catapano.

## SECOND CAUSE OF ACTION
### NEGLIGENCE: Infant, DANIELLE CATAPANO, by her mother and natural guardian, CHRISTINE CATAPANO, against WIEGAND SPORTS, LLC

53.     Plaintiff re-alleges and incorporates by reference each and every allegation contained in the foregoing paragraphs as though fully set forth herein.

54. At all times relevant to this cause of action, the Defendant WIEGAND was in the business of designing, developing, setting specifications, manufacturing, marketing, selling, and distributing the Coaster at issue herein.

55. Defendant WIEGAND SPORTS, LLC designed, manufactured, marketed, inspected, labeled, promoted, distributed and sold the Coaster upon which the infant plaintiff was riding at the time of the occurrence complained of herein.

56. Defendant WIEGAND had a duty to exercise reasonable and prudent care in the development, testing, design, manufacture, inspection, marketing, labeling, promotion, distribution and sale of the subject Coaster so as to avoid exposing others to foreseeable and unreasonable risks of harm.

57. Defendant WIEGAND knew or reasonably should have known that the subject Coaster was dangerous or was likely to be dangerous when used in its intended or reasonably foreseeable manner.

58. At the time of manufacture and sale of the Coaster, Defendant WIEGAND knew or should have known that the Coaster:

    a.    Was designed and manufactured in such a manner so as to present an unreasonable risk of partial ejection by failing to provide proper or adequate restraints or coasterbob design;

    b.    Was designed and manufactured so as to present an unreasonable risk of injury due to partial ejection and contact with projections or the tracks themselves along the course of the ride;

    c.    Was designed without any type of interlock device to prevent riders from defeating the shoulder harness portion of the seat belt;

    d.    Was designed and manufactured to have insufficient braking strength to bring the coasterbob to a stop in the event the operator lost control or contact with the brakes as a consequence of the known and anticipated g forces generated by the COASTER.

### THIRD CAUSE OF ACTION
### STRICT PRODUCTS LIABILITY - FAILURE TO WARN: Infant, Danielle Catapano by her mother and natural guardian, CHRISTINE CATAPANO against, WIEGAND SPORTS, LLC.

59. Plaintiff re-alleges and incorporates by reference each and every allegation contained in the foregoing paragraphs as though fully set forth herein.

60. Defendant WIEGAND designed, set specifications, manufactured, prepared, assembled, processed, marketed, labeled, distributed, and sold the subject Coaster, into the stream of commerce and in the course of same, directly advertised and marketed the device to consumers or persons offering use of the Coaster to consumers.

61. At the time Defendant WIEGAND designed, manufactured, prepared, assembled, processed, marketed, labeled, distributed, and sold the Coaster into the stream of commerce, Defendant WIEGAND knew or should have known the device presented an unreasonable danger to users of the product when put to its intended and reasonably anticipated use. Specifically, Defendant WIEGAND knew or should have known at the time they manufactured, labeled, distributed and sold posed a significant and higher risk than other similar rides of insufficient occupant restraint and partial ejection and resulting serious injuries.

62. Therefore, Defendant WIEGAND had a duty to warn of the risk of harm associated with the use of the Coaster and to provide adequate instructions on the safe and proper use of the Coaster. Defendant further had a duty to warn of dangers and proper safety instructions that it became aware of even after the Coaster was distributed and made available to the public.

63. Despite this duty, Defendant WIEGAND failed to adequately warn of material facts regarding the safety of the Coaster and further failed to adequately provide instructions on the safe and proper use of the Coaster.

64. No consumer would have used the Coaster in the manner directed, had those facts been made known to the public at large.

65. The risks associated with the Coaster as described herein are of such a nature that ordinary consumers would not have readily recognized the potential harm.

66. Infant plaintiff used the Coaster in a normal, customary, intended, and foreseeable manner.

67. Therefore, the Coaster used by the infant plaintiff was defective and unreasonably dangerous at the time of release into the stream of commerce due to inadequate warnings, labeling and/or instructions accompanying the product.

68. The Coaster used by the plaintiff was in the same condition as when it was manufactured, inspected, marketed, labeled, promoted, distributed and sold by Defendants.

69. As a direct and proximate result of Defendant WIEGAND's lack of sufficient warning and/or instructions, infant plaintiff DANIELLE CATAPANO has suffered and will continue to suffer serious physical injuries, economic loss, loss of enjoyment of life, disability, and other losses, in an amount to be determined at trial.

### FOURTH CAUSE OF ACTION
### STRICT PRODUCTS LIABILITY – DESIGN DEFECTS: Infant, DANIELLE CATAPANO by her mother and natural guardian CHRISTINE CATAPANO against WIEGAND SPORTS, LLC

70. Plaintiff re-alleges and incorporates by reference each and every allegation contained in the foregoing paragraphs as though fully set forth herein.

71. At all times relevant to this action, Defendant WIEGAND developed, tested, designed, manufactured, inspected, labeled, promoted, distributed and sold into the stream of commerce the subject Coaster.

72. The Coaster was expected to, and did, reach its intended consumers without substantial change in the condition in which it was in when it left Defendant WIEGAND's possession. In the alternative, any changes that were made to the Coaster used by Infant plaintiff were reasonably foreseeable to Defendants.

73 The Coaster used by infant plaintiff was defective in design because it failed to perform as safely as persons who ordinarily use the product would have expected at the time of use.

74. The Coaster used by infant plaintiff was defective in design, in that its risks of harm exceeded its claimed benefits.

75. Infant plaintiff used the Coaster in a manner that was reasonably foreseeable to Defendants.

76. Infant plaintiff could not, by the exercise of reasonable care, have discovered the Coaster's defective condition or perceived its unreasonable dangers prior to her injury.

77. As a direct and proximate result of the Coaster's defective design, infant plaintiff has suffered and will continue to suffer serious physical injuries, economic loss, loss of enjoyment of life, disability, and other losses, in an amount to be determined at trial.

**FIFTH CAUSE OF ACTION**
**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY: Infant,**
**DANIELLE CATAPANO by her mother and natural guardian CHRISTINE**
**CATAPANO against WIEGAND SPORTS, LLC**

78.     Plaintiff re-alleges and incorporates by reference each and every allegation contained in the foregoing paragraphs as though fully set forth herein.

79.     At all times relevant to this action, Defendant WIEGAND designed, researched, developed, manufactured, tested, labeled, inspected, advertised, promoted, marketed, sold, and distributed into the stream of commerce the subject coaster .

80.     At the time and place of the sale, distribution, and supply of the Defendants WIEGAND'S coaster Defendant WIEGAND expressly represented and warranted, via marketing and other materials submitted with the product, that the coaster was safe for its intended and reasonably anticipated use.

81.     Defendant WIEGAND knew of the intended and reasonably foreseeable use of the coaster, at the time they marketed, sold, and distributed the product for use by Plaintiff, and impliedly warranted the product to be of merchantable quality, and safe and fit for its intended use.

82.     Defendants impliedly represented and warranted to the public, that the Coaster was safe and of merchantable quality and fit for the ordinary purpose for which the product was intended and marketed to be used.

83.     The representations and implied warranties made by Defendant WIEGAND were false, misleading, and inaccurate because the Coaster was defective, unsafe, unreasonably dangerous, and not of merchantable quality, when used in its intended and/or reasonably foreseeable manner.

84.     At the time of infant plaintiff's injury in August, 2012, at the Jiminy Peak Resort defendant WEIGAND was already aware of numerous accidents and injuries involving its Coasters similar to the one installed at the Jiminy Peak Resort.

85.     The public at large and plaintiff in particular reasonably relied on the superior skill and judgment of Defendant WIEGAND as the designers, researchers manufacturers and distributors of the Coaster, as to whether the Coaster was of merchantable quality and safe and fit

for its intended use, and also relied on the implied warranty of merchantability and fitness for the particular use and purpose for which the Coaster was manufactured and sold.

86.     Defendant WIEGAND placed the Coaster into the stream of commerce in a defective, unsafe, and unreasonably dangerous condition, and the product was expected to and did reach infant plaintiff without substantial change in the condition in which the Coaster was manufactured and sold.

87.     Defendant WIEGAND breached their implied warranty because their Coaster was not fit for its intended use and purpose.

88.     As a proximate result of Defendant WIEGAND breaching the implied warranties, infant plaintiff, DANIELLE CATAPANO has suffered and will continue to suffer serious physical injuries, economic loss, loss of enjoyment of life, disability, and other losses, in an amount to be determined at trial.

## SEVENTH CAUSE OF ACTION
### PLAINTIFF CHRISTINE CATAPANO against JIMINY PEAK MOUNTAIN RESORT, LLC and WIEGAND SPORTS, LLC

89.     Plaintiff, Christine Catapano re-alleges and incorporates by reference each and every allegation contained in the foregoing paragraphs as though fully set forth herein.

90.     Plaintiff Christine Catapano is the mother and natural guardian of the infant plaintiff, DANIELLE CATAPANO, and as such Plaintiff, CHRISTINE CATAPANO was entitled to the society, services, comfort and enjoyment of infant plaintiff, DANIELLE CATAPANO.

102.    As a direct proximate results of the actions of the defendants as alleged herein, plaintiff, CHRISTINE CATAPANO has been deprived of the society, services, comfort and enjoyment of infant plaintiff, DANIELLE CATAPANO and has suffered economic loss.

## PUNITIVE DAMAGES ALLEGATIONS: DANIELLE CATAPANO by her mother and natural guardian CHRISTINE CATAPANO and CHRISTINE CATAPANO, individually against JIMINY PEAK MOUNTAIN RESORT, LLC and WIEGAND SPORTS, LLC

91.     Plaintiff re-alleges each and every allegation in this Complaint and incorporates each allegation into this Count, as if set forth at length, in its entirety.

92.     Plaintiff is entitled to an award of punitive and exemplary damages based upon Defendants' intentional, willful, knowing, fraudulent, malicious acts, omissions, and conduct, and their complete and total reckless disregard for the public safety and welfare.

93.     Defendants had knowledge of, and were in possession of evidence demonstrating that, the subject Coaster was defective and unreasonably dangerous yet, Defendants failed to:

    a.    Inform or warn Plaintiffs of the dangers;

    b.    To establish, staff and maintain an adequate monitoring, surveillance and safety plan for the Coaster to insure that riders were properly restrained before proceeding along a section of the ride that was controlled by gravity; and

    c.    Recall the Coaster from the market

94.     Defendants acted to serve their own interests and having reasons to know and consciously disregarding the substantial risk that their product might kill or significantly harm riders consciously pursued a course of conduct knowing that such conduct created a substantial risk of significant harm to other persons.

95.     As a direct, proximate, and legal result of Defendants' acts and omissions a described herein, plaintiffs have suffered and will continue to suffer serious physical injuries, economic loss, loss of enjoyment of life, disability, and other losses, in an amount to be determined at trial.

## PRAYER FOR DAMAGES

**WHEREFORE**, Plaintiffs, pray for relief on the entire complaint, as follows:

    a.    Judgment to be entered against all defendants on all causes of action of this Complaint;

    b.    Plaintiffs be awarded full, fair, and complete recovery for all claims and causes of action relevant to this action;

    c.    Plaintiffs be awarded all appropriate costs, fees, expenses, and pre-judgment and post judgment interest, as authorized by law on the judgments entered in Plaintiffs' behalf; and,

    d.    Such other relief the court deems just and proper.

**WHEREFORE**, plaintiffs pray for relief on the entire complaint. as follows:

### AS TO THE FIRST CAUSE OF ACTION

a.   General damages according to proof at the time of trial;

b.   Medical and other special damages, past, present, and future, according to proof at the time of trial;

c.   Interest pursuant to the laws of the State of New York;

d.   Costs of suit incurred herein;

e.   Punitive damages; and

f.   For such other and further relief as the court may deem just and proper.

### AS TO THE SECOND CAUSE OF ACTION

a.   General damages according to proof at the time of trial;

b.   Medical and other special damages, past, present, and future, according to proof at the time of trial;

c.   Interest pursuant to the laws of the State of New York;

d.   Costs of suit incurred herein;

e.   Punitive damages; and

f.   For such other and further relief as the court may deem just and proper.

### AS TO THE THIRD CAUSE OF ACTION

a.   General damages according to proof at the time of trial;

b.   Medical and other special damages, past, present, and future, according to proof at the time of trial;

c.   Interest pursuant to the laws of the State of New York;

d.   Costs of suit incurred herein;

e.   Punitive damages; and

f.   For such other and further relief as the court may deem just and proper.

### AS TO THE FOURTH CAUSE OF ACTION

a.   General damages according to proof at the time of trial;

b. Medical and other special damages, past, present, and future, according to proof at the time of trial;

c. Interest pursuant to the laws of the State of New York;

d. Costs of suit incurred herein;

e. Punitive damages; and

f. For such other and further relief as the court may deem just and proper.

### AS TO THE FIFTH CAUSE OF ACTION

a. General damages according to proof at the time of trial;

b. Medical and other special damages, past, present, and future, according to proof at the time of trial;

c. Interest pursuant to the laws of the State of New York;

d. Costs of suit incurred herein;

e. Punitive damages; and

f. For such other and further relief as the court may deem just and proper.

### AS TO THE SIXTH CAUSE OF ACTION

a. General damages according to proof at the time of trial;

b. Medical and other special damages, past, present, and future, according to proof at the time of trial;

c. Interest pursuant to the laws of the State of New York;

d. Costs of suit incurred herein;

e. Punitive damages; and

f. For such other and further relief as the court may deem just and proper.

### AS TO THE SEVENTH CAUSE OF ACTION

a. General damages according to proof at the time of trial;

b. Medical and other special damages, past, present, and future, according to proof at the time of trial;

c. Interest pursuant to the laws of the State of New York;

d. Costs of suit incurred herein;

e. Punitive damages; and

f. For such other and further relief as the court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands trial by jury on all issues.

Dated: Melville, New York
April 15, 2013

Respectfully submitted,

_____
Andres F. Alonso
**ALONSO KRANGLE LLP**
445 Broad Hollow Road
Suite 205
Melville, NY 11747
Phone No.: (516) 350-5555
Facsimile No.: (516) 350-5554
Email: AAlonso@alonsokrangle.com

*Attorneys for Plaintiffs*

JS 44 (Rev. 09/11)

# CIVIL COVER SHEET

CV - 13 2278

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

DANIELLE CATAPANO, an infant by her mother and natural guardian, CHRISTINE CATAPANO and CHRISTINE CATAPANO, individually

**(b)** County of Residence of First Listed Plaintiff  Suffolk County, New York
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Alonso Krangle LLP (516-350-5555)
445 Broad Hollow Road, Suite 205
Melville, NY 11747

## DEFENDANTS

JIMINY PEAK MOUNTAIN RESORT, LLC and WIEGAND SPORTS, LLC

FILED
CLERK'S OFFICE
U.S. DIST. COURT E.D.N.Y.

APR 16 2013

LONG ISLAND OFFICE

County of Residence of First Listed Defendant
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

SPATT, J.

LINDSAY, M.J.

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1  U.S. Government
Plaintiff

☐ 3  Federal Question
*(U.S. Government Not a Party)*

☐ 2  U.S. Government
Defendant

☒ 4  Diversity
*(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)* *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** / **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane / ☐ 365 Personal Injury - | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 400 State Reapportionment |
| ☐ 130 Miller Act | ☐ 315 Airplane Product   Product Liability | | | ☐ 410 Antitrust |
| ☐ 140 Negotiable Instrument |   Liability / ☐ 367 Health Care/ | | | ☐ 430 Banks and Banking |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel &   Pharmaceutical | | **PROPERTY RIGHTS** | ☐ 450 Commerce |
|   & Enforcement of Judgment |   Slander   Personal Injury | | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers'   Product Liability | | ☐ 830 Patent | ☐ 470 Racketeer Influenced and |
| ☐ 152 Recovery of Defaulted |   Liability / ☐ 368 Asbestos Personal | | ☐ 840 Trademark |   Corrupt Organizations |
|   Student Loans | ☐ 340 Marine   Injury Product | | | ☐ 480 Consumer Credit |
|   (Excl. Veterans) | ☐ 345 Marine Product   Liability | | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☐ 153 Recovery of Overpayment |   Liability / **PERSONAL PROPERTY** | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ |
|   of Veteran's Benefits | ☐ 350 Motor Vehicle / ☐ 370 Other Fraud |   Act | ☐ 862 Black Lung (923) |   Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle / ☐ 371 Truth in Lending | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 190 Other Contract |   Product Liability / ☐ 380 Other Personal | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | ☒ 360 Other Personal   Property Damage | ☐ 751 Family and Medical | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| ☐ 196 Franchise |   Injury / ☐ 385 Property Damage |   Leave Act | | ☐ 895 Freedom of Information |
| | ☐ 362 Personal Injury -   Product Liability | ☐ 790 Other Labor Litigation | |   Act |
| | Med. Malpractice | ☐ 791 Empl. Ret. Inc. | **FEDERAL TAX SUITS** | ☐ 896 Arbitration |
| **REAL PROPERTY** | **CIVIL RIGHTS** / **PRISONER PETITIONS** |   Security Act | ☐ 870 Taxes (U.S. Plaintiff | ☐ 899 Administrative Procedure |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights / ☐ 510 Motions to Vacate | |   or Defendant) |   Act/Review or Appeal of |
| ☐ 220 Foreclosure | ☐ 441 Voting   Sentence | | ☐ 871 IRS—Third Party |   Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment   **Habeas Corpus:** | |   26 USC 7609 | ☐ 950 Constitutionality of |
| ☐ 240 Torts to Land | ☐ 443 Housing/ / ☐ 530 General | | |   State Statutes |
| ☐ 245 Tort Product Liability |   Accommodations / ☐ 535 Death Penalty | | | |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - / ☐ 540 Mandamus & Other | **IMMIGRATION** | | |
| |   Employment / ☐ 550 Civil Rights | ☐ 462 Naturalization Application | | |
| | ☐ 446 Amer. w/Disabilities - / ☐ 555 Prison Condition | ☐ 463 Habeas Corpus - | | |
| |   Other / ☐ 560 Civil Detainee - |   Alien Detainee | | |
| | ☐ 448 Education   Conditions of |   (Prisoner Petition) | | |
| |   Confinement | ☐ 465 Other Immigration | | |
| | |   Actions | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1 Original
Proceeding

☐ 2 Removed from
State Court

☐ 3 Remanded from
Appellate Court

☐ 4 Reinstated or
Reopened

☐ 5 Transferred from
another district
*(specify)*

☐ 6 Multidistrict
Litigation

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C. § 1332
Brief description of cause:
Negligence

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION
UNDER F.R.C.P. 23

**DEMAND $**

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*   JUDGE _____   DOCKET NUMBER _____

DATE
04/15/2013

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #_____   AMOUNT_____   APPLYING IFP_____   JUDGE_____   MAG. JUDGE_____

## CERTIFICATION OF ARBITRATION ELIGIBILITY

Local Arbitration Rule 83.10 provides that with certain exceptions, actions seeking money damages only in an amount not in excess of $150,000, exclusive of interest and costs, are eligible for compulsory arbitration. The amount of damages is presumed to be below the threshold amount unless a certification to the contrary is filed.

I, _Andres F. Alonso_____, counsel for _Plaintiffs_____, do hereby certify that the above captioned civil action is ineligible for compulsory arbitration for the following reason(s):

☒     monetary damages sought are in excess of $150,000, exclusive of interest and costs,

☐     the complaint seeks injunctive relief,

☐     the matter is otherwise ineligible for the following reason

### DISCLOSURE STATEMENT - FEDERAL RULES CIVIL PROCEDURE 7.1

Identify any parent corporation and any publicly held corporation that owns 10% or more or its stocks:

### RELATED CASE STATEMENT (Section VIII on the Front of this Form)

Please list all cases that are arguably related pursuant to Division of Business Rule 50.3.1 in Section VIII on the front of this form. Rule 50.3.1 (a) provides that "A civil case is "related" to another civil case for purposes of this guideline when, because of the similarity of facts and legal issues or because the cases arise from the same transactions or events, a substantial saving of judicial resources is likely to result from assigning both cases to the same judge and magistrate judge." Rule 50.3.1 (b) provides that "A civil case shall not be deemed "related" to another civil case merely because the civil case: (A) involves identical legal issues, or (B) involves the same parties." Rule 50.3.1 (c) further provides that "Presumptively, and subject to the power of a judge to determine otherwise pursuant to paragraph (d), cases shall not be deemed to be "related" unless both cases are still pending before the court."

### NY-E DIVISION OF BUSINESS RULE 50.1(d)(2)

1.)     Is the civil action being filed in the Eastern District removed from a New York State Court located in Nassau or Suffolk County: _No_____

2.)     If you answered "no" above:
a) Did the events or omissions giving rise to the claim or claims, or a substantial part thereof, occur in Nassau or Suffolk County? _No_____

b) Did the events of omissions giving rise to the claim or claims, or a substantial part thereof, occur in the Eastern District? _No_____

If your answer to question 2 (b) is "No," does the defendant (or a majority of the defendants, if there is more than one) reside in Nassau or Suffolk County, or, in an interpleader action, does the claimant (or a majority of the claimants, if there is more than one) reside in Nassau or Suffolk County? _Plaintiff resides in Suffolk County_____
       (Note: A corporation shall be considered a resident of the County in which it has the most significant contacts).

### BAR ADMISSION

I am currently admitted in the Eastern District of New York and currently a member in good standing of the bar of this court.
       ☒   Yes      ☐   No

Are you currently the subject of any disciplinary action (s) in this or any other state or federal court?
       ☐   Yes   (If yes, please explain)    ☒   No

I certify the accuracy of all information provided above.

Signature: _____