UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETT S

| | | |
|---|---|---|
| JIMINY PEAK MOUNTAIN REPORT, LLC, | * | |
| | * | |
| Plaintiff, | * | |
| | * | Civil Action No. 14-40115-MGM |
| v. | * | |
| | * | |
| WIEGAND SPORTS, LLC, and, | * | |
| NAVIGATORS SPECIALTY | * | |
| INSURANCE, CO., | * | |
| | * | |
| Defendants. | * | |

MEMORANDUM AND ORDER ON
CROSS-MOTIONS FOR JUDGMENT ON THE PLEADINGS
(Dkt. Nos. 40 & 42)

March 16, 2016

MASTROIANNI, U.S.D.J.

I. INTRODUCTION

Plaintiff, Jiminy Peak Mountain Resort, LLC ("Jiminy") operates a ski area in Hancock, Massachusetts. In 2005 it entered into a contract with Defendant, Wiegand Sports, LLC ("Wiegand"), to purchase a Wiegand, Alpine Coaster (the "Coaster"). The Coaster opened to the public in 2006. In August of 2012, two minors were seriously injured while riding the Coaster. The parents of the minors subsequently filed two lawsuits (together, the "Underlying Action"), each asserting claims against Jiminy and Wiegand. Jiminy subsequently filed this suit against Wiegand and Defendant, Navigators Specialty Insurance, Co. ("Navigators"), Wiegand's insurer at the time the minors were injured, seeking a declaratory judgment ordering Wiegand and Navigators to pay the defense costs incurred by Jiminy in the Underlying Action. Before the court are cross-motions for

judgment on the pleadings from Jiminy and Navigators. Jiminy and Wiegand have stipulated to the dismissal of their cross-claims, agreeing to litigate those claims in the Underlying Action, rather than in this lawsuit.

## II.   JURISDICTION

In this action, Jiminy seeks an order requiring Navigators to pay Jiminy's past and future defense costs in the Underlying Action based on the terms of the contract between Jiminy and Wiegand and the insurance policy Navigators issued to Wiegand. The relief is requested pursuant to state law. Federal courts have jurisdiction over suits brought pursuant to state law where there is complete diversity of citizenship between the adversaries and the amount in controversy exceeds a threshold amount of $75,000. 28 U.S.C. § 1332; *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 513 (2006). Based on the content of the complaint and the corporate disclosures filed by the parties (Dkt. Nos. 20, 21, 55), the court finds that (1) Jiminy is a Massachusetts limited liability company, owned by two other Massachusetts limited liability companies, which in turn are owned by members who reside in Massachusetts and (2) Navigators is incorporated in Delaware, has its principal place of business in Connecticut, and is a wholly-owned subsidiary of the publicly traded Navigators Group, Inc., less than ten percent (10%) of which is owned by any other single publicly traded corporation.[1] Plaintiff asserts the amount in controversy exceeds the statutory threshold amount. In the absence of any challenge from Defendant, the court finds it has jurisdiction in this case pursuant to 28 U.S.C. § 1332.

---

[1] Though Jiminy is no longer pursuing its claim against Wiegand, the court notes that Wiegand, as a wholly-owned subsidiary of a German entity with its principal place of business in Salt Lake City, Utah, is also diverse with respect to Jiminy. (Compl. ¶ 7, Dkt. No. 1, Corp. Disclosure, ¶ 1, Dkt. No. 19.)

III. STANDARD OF REVIEW

"'A motion for judgment on the pleadings [under Rule 12(c)] is treated much like a Rule 12(b)(6) motion to dismiss,' with the court viewing 'the facts contained in the pleadings in the light most favorable to the nonmovant and draw[ing] all reasonable inferences therefrom.'" *In re Loestrin 24 Fe Antitrust Litig.*, No. 14-2071, 2016 WL 698077, at *8 (1st Cir. Feb. 22, 2016) (quoting *Pérez–Acevedo v. Rivero–Cubano*, 520 F.3d 26, 29 (1st Cir. 2008)). Where, as here, the court is presented with cross-motions for judgment on the pleadings, the court's role is "to determine whether either of the parties deserves judgment as a matter of law on facts that are not disputed." *Curran v. Cousins*, 509 F.3d 36, 44 (1st Cir. 2007) (internal citations omitted)). As in the case of a motion under Rule 12(b)(6), the court is permitted to consider documents central to the plaintiff's claims where the authenticity of the documents is not disputed and the complaint adequately references the documents. *Id.* (citing *Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993)).

IV. BACKGROUND

In December of 2005, Jiminy and Wiegand entered into a "Consulting, Purchase, Delivery, Assembly and Inspection Contract" (the "Contract"). (Compl. ¶ 9, Dkt. No. 1.) Pursuant to this contract, Jiminy agreed to purchase the Coaster and Wiegand agreed to deliver, assemble, and inspect it. (*Id.*) Section 8 of the Contract, titled "Rights and Obligations of [Jiminy]" included in its final subsection, 8(j), language stating that Wiegand would purchase product liability insurance for the Coaster, but that Jiminy was required to pay a portion of the premium, the amount of which would be determined based on the purchase price of the Coaster, and Jiminy would then be listed as an additional insured. (Compl. Ex. A, Contract, § 8(j), Dkt. No. 1-1.) (*Id.*) The Contract did not set forth the term during which Wiegand's product liability insurance policy would apply, but did provide that Jiminy would have the option to continue as an additional insured during subsequent

periods, provided it continued to pay the "same premium ratio." *Id.* The same section also provided that Jiminy would separately maintain a personal injury insurance policy "at its own expense at all times so long as [it] operates [the Coaster]." (*Id.*) The Complaint does not assert that Jiminy continued to pay premiums to remain an additional insured under Wiegand's product liability insurance policy.

> Separately at Section 12, titled "Indemnification," the Contract provided that:
>
> in the event of a product liability suit against [Wiegand], [Wiegand] "shall, at its own expense, defend any suit or proceeding brought against [Jiminy] and shall fully protect and indemnify [Jiminy] against any and all losses, liability, cost, recovery, or other expense in or resulting from such . . . suit (provided, however, [Jiminy] has fully performed all ongoing maintenance obligations).
>
> (*Id.* at § 12(A)(1).)
>
> The following paragraph then provided that Jiminy would
>
> protect, indemnify, defend and hold [Wiegand] harmless from and against any and all losses of [Wiegand] arising out of or sustained, in each case, directly or indirectly, from . . . any default by [Jiminy] . . . including without limitation, from defective/bad maintenance and/or operation of the Alpine Coaster caused by [Jiminy's] gross negligence or willful misconduct.
>
> (*Id.* at § 12(A)(2).)
>
> Under Section 18, the Contract is to be interpreted in accordance with Massachusetts law.

(*Id.* at § 18.)

The Coaster was installed and became operational in 2006. In August of 2012, two minors were seriously injured while riding the Coaster. At the time of the accident, Wiegand had a general commercial liability insurance policy with Navigators ("Policy"). (Policy, Ex. C, Dkt. No. 1-3.) The Policy Period ran from March 1, 2012 through March 1, 2013. *Id.* Pursuant to Section I(1)(a), the Policy provided that Navigators would "pay those sums that [Wiegand] becomes legally obligated to pay as damages because of 'bodily injury' . . . to which [the Policy] applies." (*Id.* at Section I(1)(a).) The obligation established under Section I(1)(a) is further defined in Section I(2)(b) as excluding

certain types of damages, including those assumed in a contract, unless assumed in an "insured contract." (*Id.* at Section I(2)(b).) In the case of an "insured contract," "reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured [was] deemed to be damages because of 'bodily injury' . . . , provided . . . that the party's defense [had] also been assumed in the same 'insured contract'" and the damages arise in a suit to which the Policy applied. (*Id.*) An "insured contract" is defined in the Policy as including "[t]hat part of any other contract or agreement pertaining to [Wiegand's] business . . . under which [Wiegand] assume[d] the tort liability of another party to pay for 'bodily injury' . . . to a third person or organization." (*Id.* at Section V(9)(f)). "Tort libililty" is, in turn, defined as "a liability that would be imposed by law in the absence of any contract or agreement." (*Id.*)

The parents of the minors injured on the Coaster in August of 2012 subsequently filed the Underlying Action against Jiminy and Wiegand.[2] (Compl., Ex. B, Compls. in Underlying Action, Dkt. No. 1-2.) The six-count complaints[3] both include a negligence claim against Jiminy (Count I), a negligence claim against Wiegand (Count II), products liability claims against Wiegand (Counts III and IV), breach of implied warranty of merchantability claim against Wiegand (Count V), and a loss of consortium claim against Wiegand and Jiminy (Count VI). (*Id.*) After the Underlying Action was filed, Jiminy filed this action against Wiegand and Navigators, seeking a declaratory judgment ordering Wiegand and Navigators to pay the defense costs incurred by Jiminy in connection with the Underlying Action. (Compl., Dkt. No. 1.) As mentioned above, Jiminy and Wiegand agreed to the dismissal of Jiminy's claim seeking declaratory judgment from Wiegand in this action and instead are litigating the issues in the Underlying Action.

---

[2] These suits were initially filed in the Eastern District of New York, but have since been transferred to this court where they are proceeding as a consolidated case - 13-cv-30108-MGM. The claims brought on behalf of the minors have already been settled. The only remaining claims in those cases are the cross-claims between Jiminy and Wiegand.
[3] In both complaints, the claims are actually labeled 1-5 and 7.

V. DISCUSSION

Both Jiminy and Navigators have moved for judgment on the pleadings. Navigators argues that as an insurer it owes a duty to defend its insured, Wiegand, but it does not owe a direct duty to defend Jiminy because Jiminy is not an additional insured under the Policy.[4] Further, the duty Navigators has under the Policy to pay defense costs to a non-insured party pursuant to a contractual liability of its insured only requires it to make payments to the insured, and only when the insured has actually requested payment. In this case, Navigators asserts that even if Wiegand is found to owe Jiminy its defense costs, it will be up to Wiegand to determine whether it wishes to pay the amount or to make a claim to Navigators. Since Navigators owes no duty directly to Jiminy and it would be up to Wiegand to determine whether to make a claim in the event judgment is entered against it with respect to Jiminy's defense costs, Navigators argues judgment on the pleadings should enter in its favor.

For its part, Jiminy begins its argument with the Contract, asserting first that the language in the Contract at § 12(A)(1) clearly establishes that Wiegand has a duty to pay Jiminy's defense costs regardless of any potential factual disputes between Jiminy and Wiegand, provided (1) the defense costs are incurred in litigation in which there is a product liability claim against Wiegand and (2) Jiminy is also a defendant named in the action.[5] As the Underlying Action includes product liability claims against Wiegand, as well as other claims against Jiminy, Jiminy asserts the two requirements are met. Jiminy then turns to the Policy, arguing that the Contract is an "insured contract" for purposes of the Policy. Finally, Jiminy argues that since the Policy provides coverage for liability assumed by Wiegand in an "insured contract," Navigator, as an insurer, is required under

---

[4] In its filings and at oral argument, Jiminy was clear that it was not claiming to be an additional insured under the Policy.
[5] Initially, in its memorandum in support of its motion for judgment on the pleadings, Jiminy argued that it would also be necessary to establish that there were no disputes as to whether Jiminy had "fully performed all ongoing maintenance obligations." (Compl., Ex. B, Contract §12(A)(1).) Subsequently, in its opposition to Navigators' motion for judgment on the pleadings, Jiminy instead argued that the requirement regarding maintenance obligations applied only to indemnification claims.

Massachusetts law, to pay for Jiminy's defense, without regard to the resolution of the dispute between Wiegand and Jiminy.

Navigators has not contested, at least relative to the purpose of the motions currently before the court, that the Contract between Jiminy and Wiegand is an "insured contract" for purposes of the Policy. Also, Navigators does not dispute or that the Underlying Action is the type of litigation covered under the Policy. The court begins its analysis by considering whether Massachusetts law allows Jiminy to compel payment from Navigators based on Navigators' obligations to its insured, Wiegand. Massachusetts law imposes on insurers a "broad duty to defend its insured against any claims that create a potential for indemnity." *Doe v. Liberty Mut. Ins. Co.*, 667 N.E.2d 1149, 1151 (Mass. 1996). This duty is broad and attaches whenever the claims in the complaint match up with the language in the policy. *See Liberty Mut. Ins. Co. v. SCA Services, Inc.*, 588 N.E.2d 1346, 1347 (Mass. 1992). However, the cases cited by the parties all involve cases in which the court discussed the duty in the context of the insured.

Jiminy has not cited any cases in which a court imposed on an insurer a duty to defend a third-party beneficiary of a policy. Instead, Jiminy argues the language of the Policy providing coverage for defense costs of a third-party pursuant to an "insured contract" shows the parties' intention that Navigators would pay such costs and, therefore, such language should be construed to impose upon Navigators a duty to make payment directly to Jiminy. The court disagrees. As demonstrated by the provisions in the Policy that allow for the designation of an additional insured, Navigators and Wiegand knew how to extend Navigators' duties as an insurer to other parties. Damages, including defense costs, associated with "insured contracts" were handled differently, indicating that Navigators and Wiegand did not, in fact, intend that in a case like this one Navigators would have any direct obligations to Jiminy based on the Contract. The Contract also included provisions regarding both additional insureds and "insured contracts," suggesting that Jiminy, like

7

Navigators and Wiegand, understood that Wiegand's promise to pay Jiminy's defense costs would not grant Jiminy the status of an "additional insured" with respect to Navigators.

In the absence of a contractual relationship between Navigators and Jiminy, the court finds no legal basis for ordering Navigators to pay Jiminy's defense costs directly. Any obligation upon Navigators to pay such costs will arise only after an insured, in this case Wiegand, makes a claim for payment and then its only obligation will be to Wiegand. Judgment on the pleadings in favor of Navigators is, therefore, appropriate.

## VI. Conclusion

For the Foregoing reasons, Plaintiff's Motion for Judgment on the Pleadings is hereby DENIED and Defendant's Motion for Judgment on the Pleadings is hereby ALLOWED.

It is So Ordered.

       /s/ Mark G. Mastroianni
       MARK G. MASTROIANNI
       United States District Judge